IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMIRATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-CV-07655 |
| | ) | |
| ANWAR ASSAF, NAWAL | ) | Judge John J. Tharp, Jr. |
| ALDRAIDI, MOHD ASSAF, SABAH | ) | |
| SAID, TALA LOGISTICS | ) | |
| INCORPORATED, TALA LOGISTIC | ) | |
| TRUCKING, and TALA LOGISTIC | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the Statement below, the defendants' motion to dismiss [26] is denied. This matter is referred to the assigned magistrate judge for all discovery scheduling and supervision, and for any settlement conference the parties may seek.

**STATEMENT**

Plaintiff Emirates, a Dubai-based airline that maintains cargo and passenger operations at O'Hare International Airport, is suing its former employee, Anwar Assaf, three of his family members, and three companies they owned and operated (the "Tala Companies").[1] Emirates seeks to hold them liable for exploiting Assaf's position to defraud the airline hundreds of times over a four-year period. The defendants have filed a motion to dismiss the complaint for failure to state a claim.

**I.      Background**

The Court accepts Emirates' well-pled factual allegations as true in ruling on this motion to dismiss. *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). Emirates hired Assaf as a cargo supervisor in 2010. Five years later, it promoted Assaf to cargo officer. With that promotion, Assaf became responsible for overseeing Emirates' day-to-day cargo operations at O'Hare. This included selecting, negotiating with, and managing third-party vendors that provided services for Emirates' cargo operations at O'Hare. He also approved the invoices they submitted.

---

[1] Assaf allegedly founded and owned all three corporate defendants. Nawal Adraidi is Assaf's wife and was the owner of Tala Logistics Incorporated. Mohd Assaf is Assaf's brother and acted as a representative of Tala Logistics Incorporated. Sabah Said is Assaf's mother and was the president of Tala Logistic company.

According to the complaint, ECF No. 1, Assaf abused his authority in the cargo operations department numerous times from 2014 to 2019 for his and his family members' financial gain. (That is, slightly before his promotion but continuing well after it.) The scheme operated as follows: Assaf would choose one of the companies that he and/or his family members owned, the Tala Companies, to provide third-party vendor services for Emirates' O'Hare cargo operations. His family members, representing themselves as agents of those companies, would submit invoices, which grossly exceeded market rates, to Assaf and other Emirates employees through email correspondence. And Assaf, knowing that he was subject to little company oversight over his decisions, approved those invoices.[2] Finally, the Tala Companies—having been formed by Assaf and/or his family members solely to effectuate the scheme and otherwise serving no legitimate business purposes—never performed the vendor services for which they invoiced Emirates; they just subcontracted those jobs out to legitimate vendors and pocketed the difference.[3] Assaf never disclosed to his employer his relationship with these companies or their representatives, his family members.

About four years in, around February 2019, Emirates discovered several discrepancies in the Tala Companies' invoices: inaccurate tax rates, excessive charges, and other unusual characteristics. It investigated the companies and found that they were owned, managed by, or otherwise associated with Assaf, Aldraidi (his wife), and/or other family members. It also found that at least one of the companies' principal places of business was Assaf's home address. In the past, Aldraidi had submitted supplier information forms to Emirates stating that she was the contact person for two of the Tala Companies. Assaf's mother, Said, had done the same for the other one. "Tala" is the name of Assaf and Aldraidi's daughter.

After learning of the details about the companies, representatives of the airline met with Assaf in March 2019 to confront him about the situation. Assaf did not provide any meaningful explanation, taunted the representatives, and walked out of the meeting. Emirates fired him a few days later.

Assaf's 2010 at-will employment contract, the relevant terms of which remained applicable following his 2015 promotion, contained a confidentiality clause and a clause stating that his job duties involved achieving targets in accordance with company standards and directives. Emirates also maintained an Employment Regulations Manual ("ERM") generally prohibiting employees from acting without integrity, being involved in activities or competing enterprises that can give rise to a conflict of interest (at least without first notifying their HR manager and getting approval), and having other employers. Emirates maintains that Assaf violated both the contract and company policy.

---

[2] Emirates has appended to its complaint a list of 218 invoices from December 2014 to January 2019 that it suspects Assaf fraudulently submitted. Compl. Ex. 6, ECF No. 1-1. The listed invoices range from $50.00 to $11,760.00. *Id*. No other details about those invoices, *e.g.*, the job type or which specific Tala Company was involved, are provided.

[3] Emirates does not clearly allege whether Tala Companies ever invoiced Emirates for services that ultimately went unperformed by anyone or that never needed to be rendered in the first place.

## II.    Analysis

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (cleaned up).

Emirates lays out nine counts in its complaint,[4] but those are legal theories, not claims. "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violates." *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). That distinction in mind, the Court discerns one basic claim in Emirates' complaint. It is that the defendants made a series of misrepresentations to Emirates by using Assaf's privileged position with the airline to covertly self-deal third-party vendor projects that the Tala Companies otherwise should not have received and invoiced Emirates for services the Tala Companies did not actually render. This injured Emirates because, had Emirates been aware of the circumstances, it would not have continued to pay Assaf's salary or paid the premium for having a middleman instead of a direct vendor relationship.

For their motion to dismiss to succeed, then, the defendants must meet their burden of showing that there is no identifiable legal theory under which this claim can plausibly proceed. The defendants have not met that burden.

The complaint, at its core, sounds of fraud. Under Illinois law, fraud requires: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Bd. of Educ. of City of Chi. v. A C & S, Inc.*, 131 Ill. 2d 428, 452 (Ill., 1989). Alternatively, "to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (Ill., 1996). And because Emirates' complaint contains averments of fraud, Federal Rule of Civil Procedure 9(b) requires it to "state with particularity the circumstances constituting fraud." That is Emirates "must provide the who, what, when, where, and how." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted). "Malice, intent,

---

[4] They are as follows: Count I: Violation of RICO, 18 U.S.C. § 1962(c), against the individual defendants. Count II: Violation of RICO, 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. § 1962(c). Count III: Common law fraud against Assaf. Count IV: Violation of Illinois' Consumer Fraud and Business Practices Act, 815 ILCS 505/1, *et seq*. against Assaf. Count V: Conspiracy to commit fraud and violate the consumer fraud act against all defendants. Count VI: Breach of fiduciary duty of loyalty against Assaf. Count VII: Aiding and abetting breach of fiduciary duty against all defendants other than Assaf. Count VIII: Unjust enrichment against all defendants. Count IX: Breach of contract against Assaf.

and other conditions of a person's mind," by contrast, "may be alleged generally." Fed. R. Civ. P. 9(b).

The defendants complain that Emirates has failed to allege specific details about each instance of fraud, *i.e.*, each project and invoice. They ask: How does Emirates know the defendants' invoices exceeded market rates? Which defendants sent which invoices? When in 2014 did Assaf decide to initiate this scheme? How did Assaf know there would be little oversight over his invoice approvals? When and how did the individual defendants form the Tala Companies? Which of the individuals owned which of the companies? What services did the defendants purportedly submit invoices for? What were the actual markups, *i.e.*, damages to Emirates?

The defendants ask too much. Rule 9(b) does not require them to "be given a 'pretrial memorandum containing all the evidentiary support for plaintiff['s] case.'" *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 749 F. Supp. 869, 872 (N.D. Ill. 1990) (quoting Pellman v. Cinerama, Inc., 503 F. Supp. 107, 111 (S.D.N.Y. 1980)). Rather, "[t]he ultimate question considered by this Court is whether the plaintiff has 'adequately detail[ed], in broad strokes, the nature and essential factual elements of the alleged fraud . . . its purposes, or the critical facts which are purportedly misrepresentations.'" *In re Harrison*, No. 1:13 CV 1139, 2014 WL 3495398 at *4 (N.D. Ill. July 14, 2014) (quoting *Adair v. Hunt Int'l Res. Corp.*, 526 F.Supp. 736, 744 (N.D.Ill. 1981)).

The complaint contains all the salient particularities necessary to pass muster under Rule 9(b). To start, the complaint sets forth the "who" of the fraud. It specifically identifies the persons and entities that were responsible for making the misrepresentations at issue (the individual defendants). Compl. ¶¶ 7-13, 26, 42-43. The defendants argue that the complaint fails to identify which specific defendants were responsible for which specific fraudulent invoices; however, the law does not require that level of detail here.

> Defendants correctly point out that, generally speaking, a complaint naming multiple defendants must provide adequate notice of the role each individual defendant allegedly played in the scheme. Where the defendants are all corporate insiders, however, the general rule does not apply. The attribution of specific fraudulent acts to specific defendants is unnecessary where the individual defendants are insiders if, as here, the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations.

*Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 749 F. Supp. 869, 872 (N.D. Ill. 1990) (cleaned up); *see also Pearle Vision, Inc. v. Eye Exam Illinois-Lansing Facility, Ltd.*, No. 93 C 1975, 1994 WL 23017 (N.D. Ill. Jan. 25, 1994) ("The Seventh Circuit has stated that Rule 9(b) requires a RICO plaintiff to provide 'a general outline of the alleged fraud scheme-one sufficient to reasonably notify the defendants of their purported role in the scheme.'" (quoting *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992))). According to the complaint, the Tala Companies and Assaf's family members each rotated in and out of the same middleman role, and the companies existed for that sole purpose. With the exception of Assaf, whose function

within the scheme the complaint clearly identifies, the defendants were effectively interchangeable, and so there would be little added benefit from a complaint that identifies which particular Tala Company submitted each particular invoice and which family member acted as which company's agent on each occasion.

The "what, when, where, and how" of the fraud are also alleged with sufficient particularity. The dates (*see* Invoice List, Compl. Ex. 6, ECF No. 1-1) and locations (electronically, via email) are clear. As for the what and the how, each Tala Company invoice sent to Emirates consists of the same core misrepresentation: that the Tala Company was selected by Assaf as the best vendor for the project at an acceptable price—based on whatever legitimate internal metrics Emirates expected Assaf to use—and without a conflict of interest. Assaf had a duty to disclose the conflict of interest but did not, instead concealing the scheme for over four years. And Emirates does not need to establish the exact delta between the invoice prices and fair market value in its complaint; it can be reasonably inferred from the allegations that it overpaid for each invoice because (1) the Tala Companies allegedly subcontracted the projects out for sums lower than the invoice prices, and (2) the scheme had to have made money for the defendants at the detriment of Emirates somehow, or else it would not have continued for so long as alleged. A plaintiff need not plead exact damages to state a claim.

The defendants do not argue that Emirates has failed to state a common law fraud claim under Illinois law, other than that the complaint does not comply with Rule 9(b)'s particularity requirements. *See* Mot. to Dismiss at 11, ECF No. 26; Defs.' Reply at 10, ECF No. 33. Indeed, for the reasons set forth above, the common law fraud claim is plausibly alleged.[5] They do, however, lodge numerous objections as to whether Emirates can proceed under its other legal theories, such as RICO, Illinois Consumer Fraud and Deceptive Business Practices Act, breach of contract, and breach of fiduciary duty. But having found that Emirates can proceed under at least a common law fraud theory, it is not necessary for the Court to examine the plausibility of those other theories, let alone dismiss them. In fact, that would be beyond the ambit of an order on a motion to dismiss;

---

[5] The Court has subject matter jurisdiction over this dispute regardless of whether Emirates' federal claims are plausibly alleged. The complaint adequately invokes diversity jurisdiction under 28 U.S.C. § 1332(a) by alleging diversity of citizenship among the parties and that the amount in controversy exceeds $75,000. See Compl. ¶¶ 6-13 (ECF No. 1) ; Initial Status Report ¶ 2 and n.1 (ECF No. 22). The parties dispute the latter prong. But it is not reasonably in dispute. A plaintiff "is not required to plead the exact amount of its damages. It merely must plead facts which support that the jurisdictional amount has been met. Specifically, in viewing the allegations of [the plaintiff's] complaint this court lacks diversity jurisdiction only if its [sic] appears 'to a legal certainty' that [the plaintiff's] claim is really for less than the . . . jurisdictional amount." *Chicago Place Partn. v. Distinct Images, Inc.*, 90 C 5343, 1991 WL 62500 at *2 (N.D. Ill. Apr. 17, 1991) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Here, Assaf's salary of over $500,000 during the period is in controversy because Emirates seeks disgorgement, and Emirates remitted nearly $350,000 for the invoices in question. Thus, it is by no means "legally certain" that the amount in controversy is less than $75,000.

5

Rule 12(b)(6) does not allow for "piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original).

Dated: May 1, 2023

John J. Tharp, Jr.
United States District Judge

6